Margaret A. McLetchie, Nevada Bar No. 10931
Alina M. Shell, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, NV 89101
Telephone: (702) 728-5300
Facsimile: (702) 425-8220
Email: maggie@nvlitigation.com

Jennifer L. Braster, Nevada Bar No. 9982
**NAYLOR & BRASTER**
1050 Indigo Drive, Suite 112
Las Vegas, NV 89145
Telephone: (702) 420-7000
Facsimile: (702)420-7001
Email: jbraster@naylorandbrasterlaw.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| EDWARD WHEELER, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>HENDERSON POLICE DEPARTMENT; and NORTH LAS VEGAS POLICE DEPARTMENT,<br><br>Defendants. | Case. No.:<br><br>**COMPLAINT**<br><br>**[JURY TRIAL DEMANDED]** |

Plaintiff EDWARD WHEELER, an individual, files this Complaint for damages pursuant to 42 U.S.C. § 1983 (civil action for deprivation of rights), 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1367(a) (supplemental jurisdiction), and 28 U.S.C. § 2201 (creation of remedy).

///

## NATURE OF THE ACTION

This is an action under 42 U.S.C. § 1983 seeking to address (1) Defendants North Las Vegas Police Department's ("NLVPD") and Henderson Police Department's ("HPD") violations of Plaintiff Edward Wheeler's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution; and (2) NLVPD's and HPD's unlawful policies and practices of permitting its officers to shoot pet dogs during the execution of search warrants even though there are no reasonable justifications to shoot the dogs and no exigent circumstances exist.

This action also seeks to address Plaintiff's several state tort claims against Defendants for negligent training, supervision, and retention, as well as intentional and negligent infliction of emotional distress. This court has supplemental jurisdiction over the state law claims.

Plaintiff is entitled to damages, costs, and attorney's fees, punitive damages, and any other relief as a victim of a civil rights violation and of tort damages.

## JURISDICTION AND VENUE

1. Jurisdiction is conferred on this Court by 28 U.S.C. § 1331, et seq. for civil claims arising under the Constitution and laws of the United States. Pursuant to § 1331, this Court has original subject matter jurisdiction over Plaintiff's claims brought under 42 U.S.C. § 1983.

2. This Court has jurisdiction over claims arising under the laws of the State of Nevada pursuant to supplemental jurisdiction provided for by 28 U.S.C. § 1367(a).

3. The prayer for relief is predicated on 28 U.S.C. § 2201 and Fed. R. Civ. P. 38. This Court has jurisdiction to award Plaintiff damages pursuant to 42 U.S.C. § 1983 and Nev. Rev. Stat. 41.130. Authorization for the request of attorneys' fees and costs is conferred by 42 U.S.C. § 1988(b).

4. Each of the Defendants acted, purported to act, and/or pretended to act in the performance of their official duties, and thus each of the Defendants acted under color of law and are subject to liability as state actors pursuant to 42 U.S.C. § 1983. *See McDade*

*v. West,* 223 F.3d 1135, 1140 (9th Cir. 2000).

5. Because Defendants are not arms of the State this suit is not barred by the Eleventh Amendment to the U.S. Constitution. *See Eason v. Clark County School*, 303 F.3d 1137, 1147 (9th Cir. 2002); *Culinary Workers Union v. Del Papa*, 200 F.3d 614, 619 (9th Cir. 1999).

6. The acts or omissions giving rise to the Plaintiff's claims all occurred in Clark County, Nevada and all parties reside or operate in Clark County, Nevada. Thus, pursuant to 28 U.S.C. §§ 1391(b)(2) and 1391(c), venue is proper in the United States District Court for the District of Nevada.

## PARTIES

7. During all relevant times herein, Plaintiff Edward Wheeler ("Wheeler") is a United States citizen who resides in Clark County, Nevada. Mr. Wheeler was the owner of a pet dog named Miracle.

8. Defendant North Las Vegas Police Department ("NLVPD") is a law enforcement agency for Clark County and the City of North Las Vegas, with jurisdiction over the City of North Las Vegas and is tasked with enforcing both Nevada statutory law and Clark County Codes. The NLVPD is sued in its official capacity.

9. An NLVPD officer ("Shooting Officer") shot and killed Miracle during the execution of a search warrant on a property adjacent to the residence of Plaintiff Wheeler. The name of the NLVPD officer is unknown at this time. On information and belief, the NLVPD officer who shot Miracle was a member of NLVPD's Special Weapons and Tactics division, or "SWAT" team. This unknown officer violated Plaintiff Wheeler's Fourth and Fourteenth Amendment rights by shooting and killing Plaintiff Wheeler's dog during the execution of a search warrant on Plaintiff Wheeler's next door neighbor's house. This constituted an unreasonable seizure of Plaintiff Wheeler's property.

10. Upon information and belief, Defendant NLVPD has engaged and engages in a policy and practice of deliberate indifference to the constitutional right of individuals who reside in or adjacent to locations upon which search warrants are executed to be free

from the unreasonable seizure (i.e. killing) of their pet dogs.

11. Upon information and belief, Defendant NLVPD is aware of and either explicitly or implicitly condoned or created a policy and practice of allowing officers under his command to kill the pet dogs of those who reside in or near locations upon which search warrants are executed. These killings constitute a destruction of property that is not reasonably necessary to effectuate the performance of law enforcement officers' duties in executing search warrants, and thus routinely violate victims' Fourth and Fourteenth Amendment rights.

12. Defendant Henderson Police Department (hereinafter "HPD") is a law enforcement agency for Clark County and the City of Henderson, with jurisdiction over the City of Henderson, and is tasked with enforcing both Nevada statutory law and Clark County Codes. The HPD is sued in its official capacity.

13. Upon information and belief, Defendant HPD regularly employs the NLVPD SWAT team to execute search warrants in Henderson, Nevada. Upon information and belief, Defendant HPD is aware of and has either explicitly or implicitly condoned or created a policy and practice of allowing officers under his command to violate the Fourth and Fourteenth Amendment rights of citizens by shooting their dogs.

14. The naming of Defendants herein is based upon information and belief. Plaintiff reserves his right to name additional defendants and modify their allegations concerning defendants named herein. Plaintiff further reserves his right to amend these allegations to identify by name the officer who shot Miracle, or any other person or persons he learns has responsibility for the killing of his pet dog.

## STANDING

15. Plaintiff was directly affected by Defendants' practices and policies of violating the constitutional rights of persons based upon their physical proximity to location upon which a search warrant was executed, as set forth more fully herein, and/or other abuses by Defendants operating under color of law as alleged herein.

16. An actual case and controversy exists between Plaintiff and Defendants

4

concerning their respective rights, privileges, and obligations.

## FACTUAL ALLEGATIONS

### *Residence of Plaintiff Wheeler and his Canine*

17.  At all times relevant to this action, Plaintiff Wheeler resided at 221 Mojave Ln. in Henderson, Nevada, and was the owner of a two dogs, Mandy and Miracle.

18.  At all times relevant to this action Plaintiff's property contained a large 2'x3' "Beware of Dogs" sign beside the gate.

### *Execution of Search Warrant on 219 Mojave Ln., September 20, 2013*

19.  On September 20, 2013, beginning at approximately 5:30 PM, Officers of HPD and NLVPD jointly executed a search warrant on 219 Mojave Lane. This property is directly adjacent to Plaintiff's residence, 221 Mojave Lane. The search warrant did not pertain to any actions or conduct of Plaintiff Wheeler, nor did it make any provisions for the safety of Plaintiff Wheeler's two dogs.

20.  During the execution of this search warrant, there were four people present at 219 Mojave Lane: two adults and two minor children. None of these four people left the premises during the execution of the search warrant.

21.  Between 5:30 PM and 6:30 PM, the Shooting Officer was participating in the execution of the search warrant by standing guard on a lot located on Shoshone Ln, directly behind Plaintiff's residence of 221 Mojave Lane.

22.  At all relevant times, the property on which the Shooting Officer was located was separated from backyard 221 Mojave Lane by a cinderblock wall. This cinderblock wall was of sufficient height that Miracle (or any other similarly-sized dog) could not possibly be capable of scaling it or posing any physical threat to the Shooting Officer or any other law enforcement officer.

23.  At some point between 5:30 PM and 6:30 PM, Plaintiff's dog, Miracle, approached the cinderblock wall separating Plaintiff's backyard from the Shooting Officer's location. At no point did Miracle scale the cinderblock wall or come into physical contact with the Shooting Officer or any other law enforcement officer on the scene, as it was

1  physically impossible for Miracle to scale the cinderblock wall.

2      24.   At some point between 5:30 PM and 6:30 PM, the Shooting Officer discharged his firearm at Miracle from behind the cinderblock wall. The shot hit Miracle in her ear canal and penetrated her brain, killing her. The bullet entered through her ear canal and exited through the bottom of her jaw, indicating Miracle was shot from a gun that was pointed at her from above.

      25.   At no point during the execution of the search warrant did any suspect, officer or other person enter the backyard of 221 Mojave Lane.

      26.   At approximately 6:40 PM, Plaintiff Wheeler returned to his residence to find police officers at his residence. It was at this time Plaintiff Wheeler learned that his dog, Miracle, had been shot and killed by a police officer.

      27.   Plaintiff Wheeler went onto his residence to retrieve his other dog, Mandy, and when he turned around, law enforcement officers had their guns drawn on Mr. Wheeler.

      28.   Plaintiff then left the residence as Defendants refused to allow him to remain on the property.

      29.   When he returned, he saw that Defendants had removed Miracle's body, but had left no information regarding who to contact to retrieve her body or to obtain more information.

      30.   Plaintiff tried to call Animal Control that evening but it was after hours. Plaintiff was forced to call 911 to find out what happened to Miracle. He was told he could pick up Miracle's body in seventy-two hours, excluding weekends.

      31.   After the seventy-two hour period, Plaintiff retrieved Miracle's body.

      32.   Defendants used unreasonable, unnecessary, and excessive force while executing the search warrant and killing Plaintiff Wheeler's dog.

      33.   Plaintiff Wheeler suffered severe emotional distress and mental anguish as a result of this incident.

**_Previous Instances of NLVPD Shooting Dogs_**

      34.   On February 8, 2008, NLVPD officers executed a search warrant at Louisa

6

Thurston's residence for her husband, a suspected armed bank robber. While NLVPD officers searched her home, they encountered her mastiff and pit bull attempting to enter the house from the backyard through the door accessible by the dogs. LVMPD officers shot the mastiff and pit bull as they entered the house.

35. On September 14, 2012, NLVPD served a narcotics search warrant on Cathy Cataldo's and Thomas Walker's home. When Cataldo and Walker opened the gate to their backyard, NLVPD officers immediately shot at their two dogs, one of which was a puppy. NLVPD officers had been to their home in the past and there was a "Beware of Dog" sign.

36. During the first week of September of 2013, as NLVPD officers approached two Nevada citizens' home, NLVPD officers shot their dog which was not acting violently. The police have been to the house many times for non-dog related issues and knew there was a dog.

37. According to NLVPD, in 2012, NLVPD officers used force on canines ten times. Of those ten incidents, eight canines died. As of October 31, 2013, NLVPD officers used force on canines seven times. Of these seven incidents, seven canines died.

### *Previous Instances of HPD Shooting Dogs*

38. On January 21, 2010, HPD officers shot a dog when responding to a domestic battery incident at an apartment. The dog had been secured in the apartment's bathroom and when an HPD officer opened the bathroom door, it exited a room towards the officers in "an aggressive manner." The HPD officer attempted to transition from his handgun to Taser when another officer shot the dog twice. The dog suffered minor injuries to its ear and remained with its owner. Another officer reports it then was "no longer acting aggressive." That officer provided the dog water and placed the dog back into the bathroom and closed the door.

39. On July 10, 2011, HPD officers shot Anthony Mitchell's dog while responding to a domestic violence call from the neighbor's house. HPD officers wanted to use Mitchell's home to perform surveillance on an ongoing domestic violence dispute at his

neighbor's home. Without a warrant, HPD officers smashed through Mitchell's front door. Mitchell's dog was shot with one or more pepperball rounds. The dog howled in pain and fled from the residence. The dog was subsequently left trapped outside in a fenced alcove in 100 degrees without access to food, water or shelter from the sun.

40. On September 17, 2011, HPD officers responded to a panhandling call. In arresting that man for pedestrian intoxication on a roadway and aggressive solicitation, the HPD officers witnessed another man apparently drinking alcohol with a dog next to him. An HPD officer called the man over to his patrol car and while away from his dog, another HPD officer shot at the dog. That man was then placed in handcuffs but not cited for any charges. The dog was then transported to the animal shelter. It is unknown whether the dog was injured or survived.

41. On March 25, 2013, HPD officers entered the residence of a David Archibeque pursuant to a telephonic search warrant. In the incident report, an HPD officer states in entering the residence, one of three pit bulls became aggressive and charged the officers. That dog was shot three times and later died.

42. In April of 2013, HPD shot Amber Hoff's dog, Ruthie, in her aunt's home. HPD officers chased a man, who allegedly shot a firearm, into Hoff's aunt's home. The man who allegedly shot a firearm would not come out of the home until the officers obtained a warrant. While obtaining the warrant, the HPD officers saw the dogs in Hoff's home. HPD officers made entry into Hoff's home, shot Hoff's dog, and left the dog to bleed for hours in the bathroom. Hoff's aunt claimed her husband said to not shoot the dog, but HPD officers shot anyway.

### *Need for Appropriate Policies and Training Is Obvious*

43. Dog ownership is common, and NLVPD and HPD both routinely interact with dogs. However, neither NLVPD nor HPD have developed appropriate training or policies to avoid unnecessarily killing dogs.

44. On information and belief, NLVPD and HPD both shoot and kill dogs that appear to be what are known as "pit bulls" due to an irrational fear and lack of training.

45. Miracle appeared to be a "pit bull."

## CAUSES OF ACTION

### First Cause of Action
### Violation of the Fourth and Fourteenth Amendments to the Constitution of the United States Pursuant to 42 U.S.C. § 1983
### (By Edward Wheeler Against All Defendants)

46. Plaintiff repeats and re-alleges Paragraphs 1 through 45 as though fully set forth herein.

47. Defendants acted under color of law, and their actions violated Plaintiff's right against an unreasonable search and seizure as guaranteed by the Fourth Amendment. The Due Process Clause of the Fourteenth Amendment of the U.S. Constitution incorporates the Fourth Amendment, protecting the right of an individual to be free from unreasonable searches and seizures of their property by agents of state and local governments.

48. The shooting of a dog during the execution of a search warrant must be reasonable under the circumstances to comply with the Fourth and Fourteenth Amendments. *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 975 (9th Cir. 2005).

49. Plaintiff's rights were, or should have been, known to the Shooting Officer. *See id.* at 978 ("[a reasonable officer] should have known that to create a plan to enter the perimeter of a person's property, knowing all the while about the presence of dogs on the property, without considering a method of subduing the dogs besides killing them, would violate the Fourth Amendment").

50. Because the Shooting Officer was at all times separated from Miracle by a cinderblock fence which Miracle was physically incapable of scaling, and Miracle was located on a property that was not a target of any search warrant, the Shooting Officer's shooting and killing of Miracle was *per se* unreasonable.

51. As a result of the above-described act of killing his pet dog, Plaintiff Wheeler was deprived of rights and immunities secured to him under the Constitution of

9

and laws of the United States including, but not limited to, his rights under the Fourth and Fourteenth Amendments to be secure in his person, the execution of his animals, to be free from the use of deadly force, to be free from punishment without due process, and to equal protection of the laws.

52. As a direct and proximate cause of Defendants' violations of the Fourth Amendment, Plaintiff Wheeler has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and he is entitled to: injunctive and declaratory relief against NLVPD and HPD, as well as their officers; attorneys' fees and costs from Defendants; and monetary, compensatory, and punitive damages from Defendants.

### SECOND CAUSE OF ACTION
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(BY EDWARD WHEELER AGAINST DEFENDANT NORTH LAS VEGAS POLICE DEPARTMENT)

53. Plaintiff repeats and re-alleges Paragraphs 1 through 52 as though fully set forth herein.

54. The failure of Defendant NLVPD to provide adequate training and supervision regarding the lawful use of an officer's service weapon on dogs amounts to deliberate indifference to the safety and Constitutional Fourth and Fourteenth Amendment rights of the citizens of the City of North Las Vegas, as well as those citizens who live in neighboring municipalities in which the NLVPD SWAT team executes search warrants.

55. Defendant NLVPD is liable because at all relevant times, it was responsible for making and enforcing constitutional policies with respect to office interactions with citizens and they failed to do, as evidenced by the pattern of NLVPD officers shooting dogs, yet NLVPD officers did not change the policy regarding NLVPD officers using force on animals when executing search warrants to comply with the Constitution.

56. As a direct and proximate cause of Defendant NLVPD's deliberate indifference to the safety and constitutional rights of citizens, Plaintiff has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiff

is entitled to: injunctive and declaratory relief against NLVPD, as well as their officers; attorneys' fees and costs from Defendants; and monetary, compensatory, and punitive damages from Defendants.

### THIRD CAUSE OF ACTION
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(BY EDWARD WHEELER AGAINST DEFENDANT HENDERSON POLICE DEPARTMENT)

57. Plaintiff repeats and re-alleges Paragraphs 1 through 56 as though fully set forth herein.

58. The failure of Defendant HPD to ensure that the HPD SWAT team members who execute search warrants in conjunction with HPD officers are properly trained and supervised regarding the lawful use of an officer's service weapon on dogs amounts to deliberate indifference to the safety and Constitutional Fourth and Fourteenth Amendment rights of the citizens of the City of Henderson.

59. Defendant HPD is liable because at all relevant times they were responsible for making and enforcing constitutional policies with respect to office interactions with citizens and they failed to do so, as evidenced by the pattern of HPD officers unreasonably shooting dogs, yet HPD officers has not changed the policy regarding HPD officers using force on animals when executing search warrants to comply with the Constitution.

60. As a direct and proximate cause of Defendant HPD's deliberate indifference, Plaintiff has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiff is entitled to: injunctive and declaratory relief against HPD, as well as their officers; attorneys' fees and costs from Defendant HPD; and monetary, compensatory, and punitive damages from Defendant HPD.

### FOURTH CAUSE OF ACTION
VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS FOR DEATH OF DOGS
TO THE CONSTITUTION OF THE UNITED STATES
PURSUANT TO 42 U.S.C. § 1983
(BY EDWARD WHEELER AGAINST ALL DEFENDANTS)

61. Plaintiff repeats and re-alleges Paragraphs 1 through 60 as though fully set forth herein.

62. When the NLVPD and HPD officers formulated the plan for the execution of the search warrant, exigent circumstances did not exist at the said residence. Thus, the shooting of the dog was an unreasonable seizure, and an unreasonable execution of the said search warrant, in violation of the Fourth amendment.

63. As a result of Defendants' unlawful conduct, Plaintiff has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiff is entitled to: injunctive and declaratory relief against HPD and NLVPD, as well as their officers; attorneys' fees and costs from Defendants; and monetary, compensatory, and punitive damages from Defendants.

### FIFTH CAUSE OF ACTION
### NEGLIGENT TRAINING, SUPERVISION, AND RETENTION
### UNDER N.R.S. 41.130
### (BY EDWARD WHEELER AGAINST ALL DEFENDANTS )

64. Plaintiff repeats and re-alleges Paragraphs 1 through 63 as though fully set forth herein.

65. Defendants had a duty to use reasonable care in the training, supervision, and retention of their employees to make sure that their employees are fit for their positions by implementing policies and procedures designed to prevent wrongful acts by its employees, such as those committed by Defendants against Plaintiff.

66. Defendants breached this duty by allowing their officers to shoot dogs during the execution of a search warrant in the past. Defendants NLVPD and HPD should have known about their officers shooting dogs since it has been in the local news. Therefore,

Defendants breached their duty by not changing the policy regarding officers and shooting pet dogs during the execution of a search warrant.

67. Defendants NLVPD and HPD are liable because at all relevant times, the officers were in the employ of NLVPD or HPD, which are responsible for their officers' conduct. Defendant NLVPD and HPD officers were not acting independently, committed the wrongful acts during the course of their official duties as security guards, and such actions were reasonably foreseeable considering the nature and scope of their employment as police officers.

68. As a result of this breach, Plaintiff has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiff is entitled to: injunctive and declaratory relief against NLVPD and HPD, as well as their officers; attorneys' fees and costs from Defendants; and monetary, compensatory, and punitive damages from Defendants.

### SIXTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER N.R.S. 41.130
### (BY EDWARD WHEELER AGAINST ALL DEFENDANTS)

69. Plaintiff repeats and re-alleges Paragraphs 1 through 68 as though fully set forth herein.

70. NLVPD and HPD Defendants intentionally caused Plaintiff to suffer severe emotional distress, as evidenced by their outrageous and unreasonable conduct of shooting Plaintiff's dog when no exigent circumstance existed. NLVPD and HPD officers conducted themselves with reckless disregard for inflicting emotional distress on Plaintiff.

71. Defendants NLVPD and HPD are liable because NLVPD and HPD officers were at all relevant times in the employ of NLVPD and HPD and NLVPD and HPD

is responsible for officers' conduct. NLVPD and HPD officers were not acting independently, committed the wrongful acts during the course of their official duties as NLVPD or HPD officers, and such actions were reasonably foreseeable where NLVPD and HPD maintained a policy of shooting pet dogs when executing search warrants.

72. As a result of this breach, Plaintiff has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiff is entitled to: injunctive and declaratory relief against LVMPD and HPD, as well as their officers; attorneys' fees and costs from Defendants; and monetary, compensatory, and punitive damages from Defendants.

### SEVENTH CAUSE OF ACTION
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS UNDER N.R.S. 41.130
### (BY EDWARD WHEELER AGAINST ALL DEFENDANTS)

73. Plaintiff repeats and re-alleges Paragraphs 1 through 72 as though fully set forth herein.

74. Defendants NLVPD and HPD owed Plaintiff a duty to not shoot his pet dog when there were no exigent circumstances, and breached that duty by shooting his pet dog.

75. Defendants NLVPD's and HPD's breach of this duty inflicted severe, physical emotional distress upon Plaintiff Wheeler

76. Defendants NLVPD and HPD are liable because NLVPD and HPD officers were at all relevant times in the employ of NLVPD or HPD and NLVPD and HPD are responsible for their officers' conduct. NLVPD and HPD officers were not acting independently, committed the wrongful acts during the course of their official duties as officers, and such actions were reasonably foreseeable where NLVPD and HPD maintained

14

a policy of shooting pet dogs when executing search warrants.

77. As a result of this breach, Plaintiff has suffered, is suffering, and will continue to suffer damages in an amount subject to proof, and Plaintiff is entitled to: injunctive and declaratory relief against LVMPD and HPD, as well as their officers; attorneys' fees and costs from Defendants; and monetary, compensatory, and punitive damages from Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

- For a trial by jury on all issues;
- For declaratory and injunctive relief;
- For monetary, compensatory, and punitive damages allowable under law in an amount to which the Plaintiff is found to be entitled;
- For an additional amount to account for additional taxes Plaintiff may be called upon to pay in relation to awards made herein;
- Attorneys' fees and costs incurred herein pursuant to 42 U.S.C. § 1988 and all applicable statutory authority; and
- Entry of such other and further relief the Court deems just and proper.

///

///

///

///

///

///

///

15

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action.

RESPECTFULLY SUBMITTED this the 15th day of September, 2015.

*/s/ Margaret A. McLetchie*

Margaret A. McLetchie, Nevada Bar No. 10931
Alina M. Shell, Nevada Bar No. 11711
**MCLETCHIE SHELL LLC**
701 East Bridger Ave., Suite 520
Las Vegas, NV 89101
Telephone: (702) 728-5300
Facsimile: (702) 425-8220
Email: maggie@nvlitigation.com

Jennifer L. Braster, Nevada Bar No. 9982
**NAYLOR & BRASTER**
1050 Indigo Drive, Suite 112
Las Vegas, NV 89145
Telephone: (702) 420-7000
Facsimile: (702)420-7001
Email: jbraster@naylorandbrasterlaw.com

*Attorneys for Plaintiff*