UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

∗ ∗ ∗

| | |
|---|---|
| EDWARD WHEELER, | Case No. 2:15-CV-1772 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| CITY OF HENDERSON, et al., | |
| Defendant(s). | |

Presently before the court is defendant City of Henderson's ("Henderson") motion to dismiss. (ECF No. 34). Plaintiff Alvin E. Adamson II filed a response (ECF No. 41), and Henderson replied (ECF No. 44).

## I.    Introduction

The present case concerns the shooting of plaintiff's dog, Miracle, during the execution of a search warrant at the residence adjacent to plaintiff's home on September 20, 2013. (ECF No. 30 at 5–6). The "shooting officer" was defendant Travis Snyder, a North Las Vegas Police Department ("NLVPD") SWAT officer. (*Id.* at 3, 6). Snyder was among those officers with the Henderson Police Department ("HPD") and NLVPD executing a search warrant at the residence next to plaintiff's and he was "standing guard" on an adjacent lot, directly behind plaintiff's residence at about 5:30 PM on September 20, 2013. (*Id.* at 5–6). The lot was separated by a cinderblock wall of sufficient height that plaintiff alleges "Miracle (or any other similarly-sized dog) could not possibly be capable of scaling it or posing any physical threat to Defendant Snyder." (*Id.* at 6).

Snyder, at some point between 5:30 and 6:30 PM, allegedly shot and killed Miracle from the other side of the cinderblock wall. (*Id.*). When plaintiff arrived, there were police officers at

his residence. (*Id.*). At that time, he learned that his dog had been shot and killed. (*Id.*). Plaintiff collected his other dog, Mandy, and left. (*Id.*). Upon his return home, Miracle's body had been removed. (*Id.* at 7). Plaintiff called 911 and was told he could collect Miracle's body in seventy-two hours; he did so, as instructed. (*Id.*).

## II.    Legal Standard

The court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pled complaint must provide "[a] short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although rule 8 does not require detailed factual allegations, it does require more than labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, a formulaic recitation of the elements of a cause of action will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (citation omitted). Rule 8 does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id.* at 678–79.

To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When a complaint pleads facts that are merely consistent with a defendant's liability, and shows only a mere possibility of entitlement, the complaint does not meet the requirements to show plausibility of entitlement to relief. *Id.*

In *Iqbal,* the Supreme Court clarified the two-step approach district courts are to apply when considering a motion to dismiss. *Id.* First, the court must accept as true all of the allegations contained in a complaint. However, this requirement is inapplicable to legal conclusions. *Id.* Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. *Id.* at 678. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged – but not shown – that the pleader is entitled to relief." *Id.* at 679. When the allegations in a complaint have not crossed the line from conceivable to plausible, plaintiff's claim must be dismissed. *Twombly*, 550 U.S. at 570.

James C. Mahan
U.S. District Judge

The Ninth Circuit addressed post-*Iqbal* pleading standards in *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  The *Starr* court held:

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.  Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*Id.*

## III.  Discussion

### A.  Federal claims

#### i.  Claims 3 and 4 under § 1983

The principal framework governing municipal liability in § 1983 actions against municipalities was established in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Under *Monell*, municipal liability must be based upon the enforcement of a municipal policy or custom, not upon the mere employment of a constitutional tortfeasor.  *Id.* at 691.  Therefore, in order for liability to attach, four conditions must be satisfied: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"  *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

"To prevent municipal liability . . . from collapsing into respondeat superior liability," federal courts must apply "rigorous standards of culpability and causation" in order to "ensure that the municipality is not held liable solely for the actions of its employees."  *Board of Cnty. Comm. of Bryan City v. Brown*, 520 U.S. 397, 405, 410 (1997).  Thus, a municipality will only be liable when the "execution of a government's policy or custom . . . inflicts the injury . . . ."  *Monell*, 463 U.S. at 694.

In order to show a policy, the plaintiff must identify "a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question."  *Fairley v. Luman*, 281

James C. Mahan
U.S. District Judge

F.3d 913, 918 (9th Cir. 2002) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992)) (internal quotation marks omitted).

"Proof of random acts or isolated events" does not fit within *Monell*'s meaning of custom. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds*, *Bull v. City & Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010). Indeed, "[o]nly if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom." *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 168 (1970))).

Moreover, plaintiff must allege a specific municipal policy in order to sustain his § 1983 claim. *See, e.g., Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) ("[O]bviously, if one retreats far enough from a constitutional violation some municipal 'policy' can be identified behind almost any such harm [(unreasonable use of force)] inflicted by a municipal official").

It is well settled in the Ninth Circuit that a plaintiff generally cannot establish a *de facto* policy with a single constitutional violation. *See, e.g.*, *Christie v. Iopa*, 176 F.3d 1231, 1235 (9th Cir. 1999). Instead, a plaintiff's theory must be founded upon practices of "sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *see also McDade v. West*, 223 F.3d 1135 (9th Cir. 2000). "[I]solated or sporadic incidents" are insufficient to enable municipal liability. *Trevino*, 99 F.3d at 918.

Plaintiff's complaint asserts two policies as the basis of the *Monell* claim against Henderson: (1) "a policy of shooting pet dogs when executing search warrants" and; (2) "Henderson employs NLVPD SWAT team to execute search warrants, despite NLVPD's history of shooting dogs during the execution of search warrants." (ECF No. 30 at 15). Plaintiff colors the use of lethal force against dogs as "unreasonable" as a matter of policy. (*Id.* at 12).

With regard to Henderson's policy of shooting pet dogs when executing search warrants, plaintiff alleges only two incidents wherein HPD shot and killed a dog while executing a search warrant. (*Id.* at 9). In at least one of those instances, the dog "became aggressive and charged the officers." (*Id.*). The other incidents alleged included two domestic violence calls and a

James C. Mahan
U.S. District Judge

panhandling call. (*Id.* at 8–9). Of those three instances, one dog was shot with a pepperball round and was left outside; one was shot due to aggressive behavior, suffered a minor wound, and was left in a bathroom with water; and the third was allegedly "shot at," transported to the animal shelter, and its condition is unknown. (*Id.*).

Plaintiff much more thoroughly alleges NLVPD's policy of shooting dogs. Even so, plaintiff only alleges two specific instances wherein NLVPD officers shot and killed a pet dog executing a search warrant and one in which officers "approached two Nevada citizens' home." (*Id.* at 7). Although plaintiff alleges fifty-three other instances of using lethal force against pet dogs, the complaint fails to plead an articulated "policy" of HPD allowing NLVPD SWAT to shoot and kill dogs while executing HPD search warrants. (*Id.* at 8). Plaintiff has alleged a litany of incidents of lethal force against dogs without a sufficient factual nexus. (*Id.*).

In order to "plausibly suggest an entitlement to relief," plaintiff must sufficiently allege a policy of Henderson deliberately disregarding NLVPD SWAT's consistent use of lethal force against dogs. *Starr*, 652 F.3d at 1216. Plaintiff alleges only "several instances" of dog-killing by NLVPD "officers" while helping executing HPD search warrants. (ECF No. 30 at 8). Taking this assertion as true, plaintiff does not demonstrate "sufficient duration, frequency and consistency" such that specifically NLVPD's SWAT team kills dogs as a "traditional method of carrying out policy," or that Henderson condones, approves, or allows such conduct. *Trevino*, 99 F.3d. at 918. Plaintiff alleges a policy of using NLVPD SWAT to help execute search warrants. (ECF No. 30 at 12). A policy of killing dogs in the course of HPD and NLVPD's cooperation would not logically follow, then, if there were only a handful of instances or "isolated events" in which lethal force was used. *Thompson*, 885 F.2d at 1443 (9th Cir. 1989).

Similarly, Snyder's individual actions, allegedly involving at least eleven instances of lethal force against dogs, do not constitute a HPD policy. (ECF No. 30 at 8); *see also Board of Cnty. Comm. of Bryan City* 520 U.S. 397, 405, 410. These facts, even if taken as true, do not satisfy the "rigorous standards of culpability and causation" required to establish a policy on the part of HPD or Henderson to sustain a § 1983 claim. *Board of Cnty. Comm. of Bryan City*, 520 U.S. at 405. The allegations against Snyder do not point to any policy being "the moving force of

the constitutional violation." *Monell*, 436 U.S. at 694. Without showing that Snyder executing the search warrant was "a known or obvious consequence" which Henderson disregarded when working with NLVPD, holding Henderson liable for Snyder's actions under a § 1983 claim would require a theory of *respondeat superior*. *Neal-Lomax v. Las Vegas Metro. Police Dep't*, 574 F. Supp. 2d 1170, 1189 (2008) (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1194–95 (9th Cir. 2002) (quotations omitted) (*overruled on different grounds by Castro v. Cnty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016))).

In light of the foregoing, plaintiff may be able to cure the deficiency in his § 1983 complaint against Henderson. *See, e.g.*, *AE ex rel Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (holding the district court abused its discretion when it did not give plaintiff leave to allege additional plausible facts supporting a policy or custom which could have cured a complaint's deficiency); *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) (holding that a plaintiff should have leave to amend where such an amendment would not be futile).

### B. State law claims

#### i. Claim 5: Negligent training, supervision, and retention

Nevada has waived its general state immunity under Nevada Revised Statutes ("NRS") § 41.031. The state's waiver of immunity is not absolute; the state has retained a "discretionary function" form of immunity for officials exercising policy-related or discretionary acts. *See* Nev. Rev. Stat. § 41.032.[1] Henderson asserts that the training of their officers is a discretionary act such that they are entitled to immunity by statute. (ECF No. 34 at 11–14).

Here, plaintiff's negligent training, supervision, and retention claim is based in state law. "It is well established that a state court's interpretation of its statutes is binding on the federal courts unless a state law is inconsistent with the federal Constitution." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1012 (9th Cir. 2004) (citing *Adderley v. Florida*, 385 U.S. 39, 46 (1966)); *see also* 28 U.S.C. § 1652.

---

[1] Title 12 of NRS states in relevant part that no action may be brought against a state officer or official which is "[b]ased upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the State or any of its agencies or political subdivisions . . . whether or not the discretion involved is abused." Nev. Rev. Stat. § 41.032(2).

In 2007, the Nevada Supreme Court adopted the United States Supreme Court's *Berkovitz-Gaubert* two-part test regarding discretionary immunity. *See Martinez v. Maruszczak*, 168 P.3d 720, 722, 728–29 (Nev. 2007). Under Nevada law, state actors are entitled to discretionary-function immunity under NRS § 41.032 if their decision "(1) involve[s] an element of individual judgment or choice and (2) [is] based on considerations of social, economic, or political policy." *Id.* at 729. "[F]ederal courts applying the *Berkovitz-Gaubert* test must assess cases on their facts, keeping in mind Congress' purpose in enacting the exception: to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *See id.* at 729 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984)) (internal quotation marks omitted).

By applying the *Berkovitz-Gaubert* test, Nevada has established two distinct types of function that public entities serve: operational functions, which do not allow for discretionary immunity; and discretionary functions, which allow immunity. *See Martinez v. Maruszczak*, 168 P.3d 720, 727 (Nev. 2007) ("[D]ecisions made in the course of operating the project or endeavor were deemed non-discretionary and, thus, not immune under the discretionary-function exception, as those decisions [are] viewed as merely operational."); *see also Andolino v. State*, 624 P.2d 7, 9 (Nev. 1981) ("[The state of Nevada] may be sued for operational acts, but maintains immunity for policy or discretionary ones").

Consequently, negligent training, supervision, and retention claims are not barred by discretionary immunity when applying Nevada law because "the training and supervision of officers is not a 'discretionary function,' but rather an 'operational function' for which Metro does not enjoy immunity under the statute." *Herrera v. Las Vegas Metro. Police Dep't*, 298 F. Supp. 2d 1043, 1055 (D. Nev. 2004); *see also Perrin v. Gentner*, 177 F. Supp. 2d 1115, 1126 (D. Nev. 2001) ("Metro's training and supervision of Officer Gentner constituted an 'operational function' for which Metro does not enjoy immunity under NRS 41.032.").

Accordingly, Henderson's motion to dismiss plaintiff's negligent training, supervision, and retention claim will be denied.

### ii. Claim 6: Intentional infliction of emotional distress

In support of his intentional infliction of emotional distress claim, plaintiff relies on the "policy of shooting pet dogs when executing search warrants and where [d]efendant Henderson employs [an] NLVPD SWAT team to execute search warrants, despite NLVPD's history of shooting dogs during the execution of search warrants." (ECF No. 30 at 15). This claim falls prey to the same analysis as his § 1983 claim. As alleged in the complaint, Henderson's actions in executing a search warrant do not, independently of Snyder's intentional conduct, constitute "deliberate indifference" to plaintiff's rights. *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006). There is no sufficient allegation to prove that any policy on the part of Henderson was the "moving force" behind the violation. *Van Ort*, 92 F.3d at 835. "At the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *Tuttle*, 471 U.S. at 823.

As a result, imposing liability on Henderson for the conduct of Snyder, a NLVPD SWAT officer, would require application of a theory of *respondeat superior*. Henderson's motion to dismiss will therefore be granted as to this claim.

### iii. Claim 7: Negligent infliction of emotional distress

In order to assert a claim of negligent infliction of emotional distress ("NIED"), plaintiff must plead: (1) plaintiff's location near the scene; (2) plaintiff's suffering an emotional injury resulting from the "contemporaneous sensory observance of the accident;" and (3) plaintiff "was closely related to the victim." *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999); *see also Villagomes v. Lab. Corp. of Am.*, 783 F. Supp. 2d 1121 (D. Nev. 2011).

Plaintiff cannot succeed on a NIED claim because the complaint admits that plaintiff did not return home until 6:40 PM though Miracle was shot "at some point between 5:30 PM and 6:30 PM." (ECF No. 30 at 6).

Additionally, Plaintiff relies on *Shoen v. Amerco, Inc.* to support his claim against Henderson for negligent infliction of emotional distress as a direct victim. 896 P.2d at 469 (Nev. 1995); (ECF No. 41 at 20). Plaintiff miscites the Nevada Supreme Court's decision in that case. *Shoen* held that a "direct victim should be able to assert a negligence claim that includes emotional

distress as part of the damage suffered as well as an intentional tort cause of action." *Shoen*, 896 P.2d at 477.

This holding was interpreted in *Villagomes*, wherein the court held "a plaintiff can also claim emotional distress damages attached to a common negligence claim." 783 F. Supp. 2d at 1126. "[Attaching emotional distress damages to a common negligence claim] is not the same as approving a separate NIED claim for direct victims, which the Nevada Supreme Court has not done." *Id.* at 1126 (citing *Kennedy v. Carriage Cemetery Servs., Inc.*, 727 F. Supp. 2d 925, 934–35 (D. Nev. 2012)).

Accordingly, Henderson's motion to dismiss will be granted as to the negligent infliction of emotional distress claim against it.

### iv.  Claim 8: Negligence

Plaintiff has sufficiently pleaded a case for negligence against Henderson. To prevail on a claim for negligence, a plaintiff must generally show that: "(1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the breach was the legal cause of the plaintiff's injury; and (4) the plaintiff suffered damages." *Scialabba v. Brandise Const. Co., Inc.*, 921 P.2d 928, 930 (Nev. 1996).

Plaintiff alleges that the shooting of his dog was a violation of Henderson's duty to "execute search warrants in a manner which does not exceed the scope of the search warrant." (ECF No. 30 at 16).  Taking the allegations set forth in the complaint as true, there appears to be a duty to plaintiff that would fall within the exception to the public duty doctrine.

In the instance case, Snyder was a public officer executing a Henderson search warrant whose alleged conduct "affirmatively caused" harm to the plaintiff. *Coty v. Washoe Cnty.*, 839 P.2d 97, 99 (Nev. 1992).  Nevada has waived its general state immunity and the immunity of all its political subdivisions under NRS § 41.031.  The Nevada Supreme Court "has implicitly assumed that municipalities are political subdivisions of the State for the purposes of applying the discretionary act immunity statute." *Shafer v. City of Boulder*, 896 F. Supp. 2d 915, 938 (D. Nev. 2012) (citing *Travelers Hotel, Ltd. v. City of Reno*, 741 P.2d 1353, 1354–55 (Nev. 1987)).  As such, Henderson can be held liable for state law tort claims, as plaintiff is alleging.

This is consistent with NRS § 41.0336 because "[a] . . . law enforcement agency is not liable for the negligent acts or omissions of its firefighters or officers or any other persons called to assist it, nor are the individual officers, employees or volunteers thereof, **unless . . . [t]he conduct of the firefighter, officer or other person affirmatively caused the harm**." Nev. Rev. Stat. § 41.0336 (emphasis added). When law enforcement agencies are generally immune from suit as a political department, the municipality can be held liable as the political subdivision responsible for its conduct. *See, e.g.*, *Shafer*, 896 F. Supp. 2d at 939; *Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996).

Moreover, Henderson is not immune to plaintiff's negligence claim because "certain acts, although discretionary, do not fall within the ambit of discretionary-act immunity because they involve negligence unrelated to any plausible policy objectives." *Butler ex rel. Biller v. Bayer*, 168 P.3d 1055, 1066 (Nev. 2007) (quoting *Martinez v. Maruszczak*, 168 P.3d 720, 728 (Nev. 2007)) (internal quotation marks omitted). Executing search warrants in a way that does not violate the rights of citizens is an operational function, as it does not "involve an element of individual judgment or choice." *Martinez v. Maruszczak*, 168 P.3d at 729.

Search warrants being improperly executed may constitute an "act[] taken in violation of the Constitution [which] cannot be considered discretionary." *Koiro v. Las Vegas Metro. Police Dep't*, 69 F. Supp. 3d 1061, 1074 (D. Nev. 2014) (citing *Mirmehdi v. United States*, 689 F.3d 975, 984 (9th Cir. 2011); *Nurse v. United States*, 226 F.3d 996, 1002 (9th Cir. 2000)) (Denying a motion for summary judgment because Las Vegas Metro Police Department and its officer were not entitled to discretionary immunity as a result of allegations that the officer violated plaintiff's constitutional rights). In the present case, plaintiff clearly alleges a violation of his constitutional rights. *See generally* (ECF No. 30).[2]

Furthermore, plaintiff alleges that this duty was breached by the shooting of plaintiff's dog, Miracle. (ECF No. 30 at 17). Plaintiff alleges "that a search warrant must command searching

---

[2] Additionally, there may eventually be an additional plausible claim for relief on the face of the complaint should there be a showing of bad faith which would bar discretionary immunity. *Koiro*, *69 F. Supp. 3d at 1074.* (citing *Falline v. GNLV Corp.*, 823 P.2d 888, 891 (Nev. 1991); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1059 (9th Cir. 2007)).

officers to search a specific person or place."  (ECF No. 30 at 16–17).  These allegations are supported by statute, as NRS § 179.045(1) requires that "the magistrate shall issue a warrant identifying the property and naming or describing the person or place to be searched."

Plaintiff has alleged that Henderson actually and proximately caused the death of his dog by allowing the officers to "forcibly enter the curtilage of [p]laintiff's home" in the execution of a search warrant to which plaintiff was not the subject.  (ECF No. 30 at 17).  Under Nevada law, the questions of proximate cause and reasonableness presented by a negligence claim usually advance questions of fact for the jury, such that granting a motion to dismiss would be improper.  *Frances v. Plaza Pac. Equities*, 847 P.2d 722, 724 (Nev. 1993).

The pleading is sufficient to allege a case for negligence.  Discovery is appropriate to establish whether there is an interlocal or cooperative agreement that apportions liability between Henderson and North Las Vegas, or if NLPVD is obligated to "defend, hold harmless and indemnify the other law enforcement agency [HPD] and its employees from any claim or liability arising from an act or omission performed by its own employee while participating in the matter for which assistance was requested."  Nev. Rev. Stat. § 277.035.

Consequently, Henderson's motion to dismiss the negligence claim is denied.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion to dismiss plaintiff's claims (ECF No. 34) be, and the same hereby is, GRANTED IN PART, without prejudice, as to claims three, four, six, and seven and DENIED IN PART as to claims five and eight, consistent with the foregoing.

DATED June 21, 2017.

_____
UNITED STATES DISTRICT JUDGE